UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | **INFORMATION** CR08-304 MJD |
| Plaintiff, ) | |
| ) | (18 U.S.C. § 371) |
| v. ) | |
| ) | |
| DEANNA LYNN COLEMAN, ) | |
| ) | |
| Defendant. ) | |

THE UNITED STATES ATTORNEY CHARGES THAT:

### Count 1
(Conspiracy)
18 U.S.C. § 371

1.    From in or about 1995 and continuing through in or about September 2008, in the State and District of Minnesota and elsewhere, the defendant,

**DEANNA LYNN COLEMAN,**

along with persons identified in this Criminal Information as "Individual A," "Individual B," "Individual C," and "Individual E," and others known and unknown to the United States, did knowingly and unlawfully conspire and agree to perpetrate a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises and did knowingly cause to be sent, delivered, and moved by the United States Postal Service and interstate commercial carrier various mailings for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 371.

2.    The defendant worked for a company, Company A.  On behalf

SCANNED

OCT 0 6 2008

U.S. DISTRICT COURT MPLS

FILED OCT 6 2008
RICHARD D. SLETTEN
JUDGMENT ENTD
DEPUTY CLERK

U.S. v. Deanna Lynn Coleman

of Company A, and at the direction of Individual A, the owner and president of Company A, the defendant worked with another employee of Company A (Individual E) to fabricate documents used by Individual A and others to induce third parties to provide Company A with billions of dollars in loans.

3.   The fabricated documentation purported to memorialize the purchase of merchandise by Company A from two supplier companies: Company B, run by Individual B, and Company C, run by Individual C. Company A represented to the third-party lenders that Company A would then resell the merchandise it purchased from Company B and Company C to big box retailers based on purchase orders purportedly received from these retailers.   The transactions were fictitious and the documents were fabricated.

4.   A substantial portion of the funds that were lent to Company A were secured by promissory notes, and in some instances by security agreements, that pledged as collateral either: (a) the merchandise that Company A purportedly had purchased from Company B and Company C; and/or (b) accounts receivable for the fictitious purchase orders between Company A and the big box retailers.   In many instances, lenders would wire the funds lent to Company A directly to Company B or Company C based on representations made to the lenders by Individual A and Company A that the funds would be

U.S. v. Deanna Lynn Coleman

used to finance the merchandise purportedly purchased by Company A.
In such cases, rather than provide Company A with merchandise,
Company B and Company C, at the direction of Individual A, would
simply re-direct the funds to Company A less a commission.  During
the course of the conspiracy, Company B and Company C funneled tens
of billions of dollars through their respective accounts in
furtherance of the scheme.  Individuals B and C were paid millions
of dollars to use their companies' bank accounts to conceal and
disguise the nature, source, ownership and control of the funds.

     5.   The current debt of Company A is more than $3 billion,
much of which was obtained through the fraudulent scheme over the
course of more than 13 years.

     6.   For her efforts, the defendant received millions of
dollars.  The vast majority of the fraud proceeds went to Company A
and Individual A, and were then used to fund the operations of
other companies owned by Individual A, to pay others who assisted
in the fraud scheme, and for Individual A's extravagant lifestyle.

     7.   The defendant understood that in furtherance of the
scheme, items would be sent, delivered, and moved by the United
States Postal Service and interstate commercial carrier various
mailings for the purpose of executing the scheme.

     All in violation of Title 18, United States Code, Section 371.

3

U.S. v. Deanna Lynn Coleman

## Forfeiture Allegations

Count 1 of this Information are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c).

As a result of the offense alleged in Count 1 of this Information, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation of Title 18, United States Code, Section 371.

If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and by Title 28, United States Code, Section 2461(c).

U.S. v. Deanna Lynn Coleman

All in violation of Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), 371, 1341, and Title 28, United States Code, Section 2461(c).

Date: *October 6, 2008*

FRANK J. MAGILL, JR.
United States Attorney

BY: *Joseph Dixon*

JOSEPH T. DIXON, III
JOHN R. MARTI
TIMOTHY C. RANK
Assistant U.S. Attorneys

5